# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANTWON PIERCE**
    **Petitioner-Defendant,**

v.                        **Case No. 11-C-0781**
                                 **(Criminal Case No. 10-CR-62)**

**UNITED STATES OF AMERICA**
    **Respondent-Plaintiff.**

## RULE 4 ORDER

Petitioner Antwon Pierce pleaded guilty to conspiracy to distribute heroin, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(B), & 846, arising out of his participation in a drug trafficking organization headed by John West. Although the case was charged under § 841(b)(1)(B), which sets penalties for cases involving 100 grams or more of heroin, in the factual basis section of his plea agreement petitioner stipulated that the West organization was responsible for in excess of 1 kilogram of heroin; he admitted that he was personally responsible for at least 100 grams. (Case No. 10-CR-62, Plea Agreement [R. 75] at 14, attachment A.) The government agreed that it would recommended a relevant conduct drug weight of 1 to 3 kg of heroin for petitioner; he did not join that recommendation. (Plea Agreement at 5 ¶ 17.)

I ordered a pre-sentence report ("PSR") in anticipation of sentencing, which set petitioner's drug weight at 1 to 3 kg of heroin, producing a base offense level of 32. U.S.S.G. § 2D1.1(c)(4). The PSR then deducted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 29. Coupled with petitioner's criminal history category of III, level 29 produced a guideline range of 108-135 months. Petitioner objected to the PSR, advocating

a weight of 100+ grams of heroin; the government maintained its position that he was responsible for more than 1 kilogram. (Case No. 10-CR-62, Govt.'s Resp. to Def.'s Objec. [R. 128] at 2.) The effect of this dispute on petitioner's potential sentence was significant: in addition to a guideline differential of 108-135 v. 57-71 months, the government's weight could have triggered a statutory mandatory minimum of 10 years, while petitioner's proposed weight set the minimum at 5 years.

Prior to the sentencing hearing the parties resolved their dispute, agreeing to petitioner's drug weight but jointly recommending a sentence of 8 years. (Case No. 10-CR-62, Sen. Minutes [R. 134] at 3; Sen. Tr. [R. 219] at 3.) I personally addressed petitioner on the record, and he confirmed that he understood this agreement and agreed with it. (Sen. Tr. at 4.) I accepted the parties' resolution of the drug weight issue and imposed the jointly recommended term of 96 months. (Sen. Tr. at 3, 8.) Petitioner took no appeal, but he now moves to vacate his sentence, arguing (1) that his lawyer provided ineffective assistance of counsel in various respects; (2) that the prosecutor engaged in misconduct by advocating the higher drug weight; and (3) that I erred by not sufficiently explaining the sentence in the Judgment's Statement of Reasons.

## I. SECTION 2255

Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It does not serve as a substitute for direct appeal, Varela v. United States, 481 F.3d 932, 935 (7th Cir. 2007), and provides relief based only on legal errors that are jurisdictional,

2

constitutional, or constitute a fundamental defect which inherently results in a complete miscarriage of justice, see, e.g., United States v. Springs, 988 F.2d 746, 748 (7th Cir. 1993); Oliver v. United States, 961 F.2d 1339, 1341 (7th Cir. 1992). Issues that could have been raised on direct appeal, but were not, generally may be considered on collateral review only if the prisoner can show good cause for failing to raise the issue previously and actual prejudice based on the alleged error. See, e.g., Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005).[1] Further, non-constitutional errors not amounting to a complete miscarriage of justice, which could have been raised on appeal but were not, are barred on collateral review regardless of cause and prejudice. Young v. United States, 124 F.3d 794, 796 (7th Cir. 1997).

Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, the district court must conduct a preliminary review of a § 2255 motion:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion or other response . . . .

Under this screening Rule, the district court may dismiss a § 2255 action without holding a hearing or requiring the government to respond if the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief. Gallo-Vasquez v. United States, 402 F.3d 793, 797 (7th Cir. 2005); see also Hutchings v. United States, 618 F.3d 693, 699-700 (7th Cir. 2010).

---

[1] Ineffective assistance of counsel claims constitute an exception to this general rule and may be raised for the first time under § 2255. See Massaro v. United States, 538 U.S. 500 (2003).

3

## II. DISCUSSION

A. **Ineffective Assistance of Counsel Claims**

In order to establish a claim of ineffective assistance of counsel, petitioner must show both that his attorney's performance was objectively deficient, and that he was prejudiced by the sub-par representation. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). The court's review of a lawyer's performance is highly deferential, reflecting a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689. In order to establish prejudice, petitioner must show that there is a reasonable probability that but for his counsel's mistakes the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. Id. at 694.

1. **Plea Agreement**

Petitioner first argues that his lawyer negotiated a plea agreement that gave him nothing. Counsel should have negotiated a Rule 11(c)(1)(C) plea agreement with a locked-in sentence of 60 months, petitioner contends.[2] He states that he was adamant with counsel that he wanted and would agree to a 60-month sentence.[3] (Case No. 11-C-781, Motion [R. 1] at 3.)

A defense lawyer cannot force the government to enter into any particular type of plea agreement, and claims that a lawyer should have driven a better bargain are not cognizable under the Sixth Amendment. See, e.g., Bethel v. United States, 458 F.3d 711, 721 (7th Cir. 2006) (holding that a claim that the defendant could have negotiated a better plea deal was not

---

[2]Under Fed. R. Crim. P. 11(c)(1)(C), the parties agree that a specific sentence is the appropriate disposition of the case, and such agreement binds the court once it accepts the plea agreement.

[3]As he concedes in the instant motion, however, under the plea agreement petitioner actually accepted he faced a sentence of 5-40 years, with no guarantee of any particular term.

4

sufficient to show prejudice); Lawuary v. United States, 199 F. Supp. 2d 866, 877 (C.D. Ill. 2002) ("[C]ounsel's failure to secure a better plea agreement does not rise to the level of ineffective assistance of counsel in violation of the Sixth Amendment."). The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions, but it does not guarantee the right to counsel who knows and exploits every tactical advantage – unrelated to guilt or innocence – on his client's behalf. Prewitt v. United States, 83 F.3d 812, 818 (7th Cir. 1996). Petitioner concedes his guilt in this case. He complains that he still does not know what count 5 (which the government agreed to dismiss) charged, that he signed the plea agreement believing he would get a 60 month sentence, and that the agreement never should have been signed (Motion at 3), but at no point does he seek to withdraw his plea and proceed to trial. He argues only that his sentence was unreasonable and should be corrected to 60 months. (Motion at 2.) However, he presents no evidence and develops no argument that his lawyer made some legal error, cognizable under the Sixth Amendment, resulting in a longer sentence. Indeed, given the alternative petitioner faced – a possible minimum sentence of 10 years – counsel's ultimate resolution of the case for 8 years appears to have been sound strategy.

**2.  Appeal**

Petitioner next asks why counsel did not file a direct appeal after he was sentenced to 96 months. He indicates that the court made an error in sentencing,[4] which should have been appealed. The plea agreement did not prohibit an appeal, so why was one not filed, petitioner asks. (Motion at 3-4.)

A lawyer provides ineffective assistance by failing to file a notice of appeal on his client's

---

[4]Petitioner here refers to the court's failure to adequately explain the above-guideline sentence. As discussed below, there was no such error.

5

request, without regard to the probability of success on appeal. Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). However, as the Castellanos court noted: "'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue." Id. Here, petitioner makes no claim that he told his lawyer to appeal, stating only that an effective lawyer would have realized that errors were made at sentencing which should have been brought up on direct appeal. (Motion at 4.)

In this type of situation – where there is no evidence that the defendant told his lawyer to appeal – the court asks (1) whether counsel consulted with the defendant about an appeal,[5] and (2) if not, whether counsel's failure to consult resulted in deficient performance because either a rational defendant would want to appeal (for example, because there were non-frivolous grounds for appeal) or this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Flores-Ortega, 528 U.S. at 478-80. In order "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. This inquiry often overlaps with the performance issue, in that both may be satisfied if the defendant shows non-frivolous grounds for appeal. Id. at 485-86.

Based on petitioner's claim that counsel "started to avoid" him after sentencing (Motion at 4), I will assume, arguendo, a lack of consultation. But there is no evidence in the record that counsel's alleged failure constituted ineffective assistance. Petitioner makes no claim that

---

[5]If so, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478.

he ever suggested to counsel that he was interested in appealing, and the reason why a competent lawyer would not have filed a notice or advised petitioner to appeal is obvious: petitioner pleaded guilty, preserving no issues for appellate review; the court adopted the guideline calculations stipulated by the parties; and petitioner received the sentence he requested. There was nothing to appeal, and no rational defendant would have chosen to pursue one. See Bednarski v. United States, 481 F.3d 530, 536 (7th Cir. 2007) (rejecting ineffective assistance claim on similar facts); see also Roe-Flores, 528 U.S. at 480 (stating that the court should consider whether the conviction follows a trial or a guilty plea, whether the defendant received the sentence bargained for, and whether the plea expressly reserved or waived some or all appeal rights).

### 3. Additional PSR Objection

Petitioner next argues that this lawyer should have objected to ¶ 52 of the PSR, in which he was listed as the number three person in the West organization. Petitioner argues that this was not true and that his involvement was more limited. (Motion at 4.) However, petitioner received no enhancement under U.S.S.G. § 3B1.1 or any other provision of the guidelines based on his role in the offense, so it is hard to see how he suffered any prejudice due to the failure to object. As petitioner concedes, counsel did object to drug weight and related factual contentions in the PSR, which affected both the guideline and statutory penalties petitioner faced. And, as discussed above, the court ultimately adopted the guideline calculations and imposed the sentence petitioner requested. Because there is no reasonable probability that the result of the proceeding would not have been different if counsel had objected to this

7

paragraph, petitioner suffered no prejudice.[6]

### 4. Failure to Demand Proof

Next, petitioner argues that his lawyer should have demanded to see the government's evidence supporting the drug weight determination. He indicates that the government's allegation of larger quantities and greater participation stood unchecked until the court set the record straight and reduced the weight to 100 grams. He claims that this shows the evidence supporting the government's claim did not exist, and counsel should have objected and demanded proof. (Motion at 5.)

But counsel did object to the PSR and government's drug weight figure. In response, the government filed a memorandum explaining its position and stating that it was prepared to present testimony at the sentencing hearing. (Case No. 10-CR-62, Govt.'s Resp. to Def.'s Objec. at 2.) That proved unnecessary after the parties reached a resolution of the dispute. There was no prejudice from counsel's alleged error in failing to demand proof.[7]

### 5. Discovery

Petitioner next claims that his lawyer refused to provide him with the discovery, which

---

[6]Petitioner asks why, if he was the number three person, he received more time than other members of the conspiracy. (Motion at 4-5.) Without getting into a complete recitation of the sentences in this case, I note that West agreed to a drug weight of 1 to 3 kilograms, producing a guideline range of 151-188 months for him, and received a sentence of 78 months based on substantial assistance. Hunter, West's primary distributor, also agreed to a drug weight of 1 to 3 kilograms. Because he qualified for the safety valve, Hunter's starting guideline range was 70-87 months, and he received a sentence of 42 months based primarily on substantial assistance. Joseph Miller likewise agreed to the 1 to 3 kilogram weight. He received a sentence of 120 months, adjusted to 109 months to credit time served on another sentence.

[7]Petitioner presents no evidence and makes no argument that the government failed to provide counsel with discovery.

8

made it difficult to prepare the instant motion. (Motion at 5.) However, petitioner cites no authority for the proposition that counsel provides ineffective assistance or denies a former client due process of law by failing to provide discovery after the case is over.[8] Nor does he specify how he was harmed by this alleged failure. See Gallo-Vasquez, 402 F.3d at 797 (stating that a § 2255 motion based on conclusory or speculative allegations may be dismissed without a hearing).

**B. Prosecutorial Misconduct Claim**

Petitioner's second claim is that the prosecutor engaged in misconduct by advocating the higher drug weight. The government stated that petitioner made numerous trips to Chicago to pick up heroin for West, obtaining 50 to 60 grams per trip. Petitioner argues that such claims were untrue because he knew how many times he traveled to Chicago (just two or three), and any proof to the contrary would have been manufactured or an outright lie. He states that he is fortunate in that the court recognized something was amiss and lowered his offense level from 29 to 23, and changed his guideline range from 108-135 to 57-71. (Motion at 6-7.)

Petitioner waived this argument by failing to raise it on direct appeal. See Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). Thus, I can consider it now only if he shows cause for and prejudice from his failure to raise it previously. Id. (citing Bontkowski v. United States, 850 F.2d 306, 313 (7th Cir. 1988)). Petitioner makes no attempt to show cause and because, as petitioner concedes, the result of the alleged misconduct was "corrected" at

---

[8]Petitioner does not argue that counsel failed to review discovery with him while the case was pending. In any event, a defendant's subsequent realization that the government may have had less evidence than he initially believed, or that he entered the plea before he had a chance to review all the discovery, will not undermine a plea supported by an adequate factual basis. See United States v. Underwood, 174 F.3d 850, 853-54 (7th Cir. 1999).

9

sentencing, he cannot show prejudice. Even setting the parties' ultimate agreement on drug weight aside, petitioner cannot demonstrate that he was prejudiced by the government's contentions.

In analyzing a claim of prosecutorial misconduct, the court must first determine whether the statements made by the prosecutor were improper. If so, the court must look at the remarks in light of the entire record to determine if the defendant was deprived of a fair proceeding. Id. (citing United States v. Badger, 983 F.2d 1443, 1450-51 (7th Cir. 1993); United States v. Goodapple, 958 F.2d 1402, 1409-10 (7th Cir. 1992)).[9] Here, the record reveals a good faith basis for the government's contentions.

The government sought to hold petitioner responsible for 1 to 3 kilograms of heroin, based on statements from co-defendants. The PSR in ¶ 35 concurred, indicating that petitioner provided heroin from a Chicago source to the John West conspiracy on a weekly basis between May 2009 and January 2010, typically 50 grams per week; 50 grams per week over an eight month period equals 1.6 kilograms. Petitioner argued that the weight should be 100 to 400 grams, stating that he made just two or three trips to Chicago for the conspiracy, obtaining 50 to 60 grams each time.

As the government noted in its response to the PSR objections, petitioner's focus on the amounts he personally transported was misplaced. In a drug conspiracy, each conspirator is responsible not only for drug quantities directly attributable to him but also for amounts involved in transactions by coconspirators that were reasonably foreseeable to him. See United States v. Turner, 604 F.3d 381, 385 (7th Cir. 2010); see also United States v. Easter, 553 F.3d 519,

---

[9]This is the standard that applies to misconduct at trial; I will assume that the same standard could apply at sentencing.

10

Case 2:11-cv-00781-LA   Filed 09/02/11   Page 10 of 14   Document 2

523 (7th Cir. 2009). The government noted that in his plea agreement petitioner admitted that the West conspiracy involved more than 1 kilogram and argued that under Pinkerton v. United States, 328 U.S. 640 (1946) he was responsible for the full weight, whether he made two trips or twenty. The government further noted that a sentencing court is entitled to rely on facts in the PSR unless the defendant establishes that the report is inaccurate or unreliable. See United States v. Moreno-Padilla, 602 F.3d 802, 808-809 (7th Cir. 2010), cert. denied, 131 S. Ct. 897 (2011). A bare denial of the truth of the PSR will not suffice. Turner, 604 F.3d at 385. The government concluded that under the circumstances the weight attributable to petitioner should be 1+ kilograms of heroin, and that, if necessary, it was prepared to call the DEA case agent to establish the weight of the conspiracy should the court find such additional evidence necessary. (Case No. 10-CR-62, Govt.'s Resp. to Def.'s Objec. at 2.)

There is no basis for concluding that these arguments were made other than in good faith. While a defendant convicted of conspiracy is not automatically liable for the acts of his coconspirators, only for those acts or omissions that were both made in furtherance of the conspiracy and foreseeable to the defendant, see United States v. Dean, 574 F.3d 836, 844-45 (7th Cir. 2009), the undisputed evidence of record in this case, including petitioner's admitted role as a courier for West, and his admitted residence in a house West and his associates used to sell and store heroin, supports an inference that he could foresee amounts greater than those he handled personally (even if he made just two or three trips). Further, aside from his own bare denial, even now petitioner presents no evidence that he took just two or three trips rather than the weekly trips mentioned in the PSR.

**C.   Explanation of Sentence Claim**

Finally, petitioner argues that I erred by not sufficiently explaining the sentence in the

11

Judgment's Statement of Reasons. Petitioner states that he understands the court was authorized to give him any sentence from 5 to 40 years. However, he contends that the court imposed a sentence outside the guideline range without providing a justification for the variance. He indicates that, in the Statement of Reasons, sub-section D ("Explain the facts justifying a sentence outside the advisory guideline system") is "mysteriously blank." (Motion at 8.) Petitioner contends that there is no justification to warrant the unreasonable variance above the guideline range.

The claim fails. Petitioner defaulted it by failing to litigate a direct appeal, and the claim does not engage any of the requirements of § 2255(a). As petitioner concedes, the sentence was well within the maximum authorized by law, and he makes no argument that the sentence was imposed in violation of the Constitution, or that the court was without jurisdiction to impose the sentence. 28 U.S.C. § 2255(a). Further, because the sentencing guidelines are not "laws" of the United States, errors in their application are generally not cognizable under § 2255. See United States v. Wisch, 275 F.3d 620, 625 (7th Cir. 2001) (citing Scott v. United States, 997 F.2d 340 (7th Cir. 1993)); see also United States v. Demaree, 459 F.3d 791, 795 (7th Cir. 2006) (noting that the advisory guidelines are not "laws" that bind the sentencing court). Nor does a district court's alleged misunderstanding of the scope of its authority under the guidelines authorize relief under § 2255. Springs, 988 F.2d at 748.

In any event, even if I overlook the default (or consider this claim through the lens of ineffective assistance), the claim lacks merit. Sub-section D is not blank, as petitioner contends. Rather, it reads: "See page four." (Statement of Reasons at 3.) And on page four, the Statement reads: "Consistent with the joint recommendation of the parties and for the reasons stated on the record, the court finds a sentence of 96 months sufficient but not greater

12

than necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a)." (Statement of Reasons at 4.)[10] Petitioner may now regret entering into the agreement for an 8-year joint recommendation, but ignoring the agreement does not make it go away.[11] And the amount of reasoning a district court judge needs to provide when explaining a sentence varies according to the context, Rita v. United States, 551 U.S. 338, 357 (2007); where, as here, the court imposes the sentence the parties wanted there is no need for an exhaustive written explanation.[12] See, e.g., United States v. Hernandez, 603 F.3d 267, 272 (4th Cir. 2010) (finding the district court's "sparse explanation" legally sufficient where the court imposed the sentence requested by the defendant).

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order

---

[10] I provided reasons for the sentence under 18 U.S.C. § 3553(a) on the record. (Sen. Tr. at 5-9.)

[11] As indicated above, counsel's negotiation of this agreement appears to have been sound strategy, as it may have saved petitioner 2 years in prison. As also indicated above, petitioner personally agreed to this disposition on the record.

[12] Petitioner argues that his sentence was unreasonable because all of his co-defendants received less time. Co-defendant disparity does make a sentence unreasonable as a matter of law. See United States v. Bartlett, 567 F.3d 901, 908 (7th Cir. 2009). In any event, petitioner is wrong on his facts. As indicated in n. 6, supra, Miller received 109 months. West received 78 months but only because he provided substantial assistance. Hunter also received a lower sentence, but he cooperated and qualified for the safety valve. Petitioner, on the other hand, had a significant prior record and did not cooperate; there is nothing unwarranted about giving a lower sentence to a co-defendant who cooperated or had a less serious record. Id.

13

adverse to a § 2255 petitioner. A COA may issue only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the court denies a motion on the merits, the standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a district court denies a motion on procedural grounds, the petitioner must show both that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id. at 484-85. For the reasons stated above, jurists of reason would not disagree with either my procedural or merits rulings, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 2nd day of September, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

14